NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MHA, LLC d/b/a Meadowlands Hospital Medical Center,<br><br>Plaintiff,<br><br>v.<br><br>SIEMENS HEALTHCARE DIAGNOSTICS, INC.,<br><br>Defendant. | Civil Action No.: 15-1573 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Siemens Healthcare Diagnostics Inc. ("Siemens")'s motion to lift temporary restraints entered by the New Jersey Superior Court on February 13, 2015, prior to the date that this action was removed to the District Court for the District of New Jersey. (ECF No. 23, "Def's. Mov. Br.").[1] Plaintiff MHA, LLC, d/b/a Meadowlands Hospital Medical Center ("Meadowlands" or "the Hospital") opposes this motion. (ECF No. 24, "Pl's. Opp. Br."). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Defendant's motion to lift temporary restraints; however, pursuant to Defendant's concession (Def's. Mov. Br. at 18) the Court will order Defendant to continue to provide critical reagents to the Hospital until it makes appropriate alternative arrangements or until further Order of the Court.

---

[1] While Defendant's papers are filed as a "motion to lift temporary restraints," it is technically an opposition to Plaintiff's order to show cause as to why a preliminary injunction should not be entered. (See ECF No. 22). For the sake of docket consistency, the Court will refer to Plaintiff's motion for an order to show cause (ECF No. 1-2, "Pl's. OTSC Mot.") as "Plaintiff's order to show cause motion," will refer to the instant motion (ECF No. 23, "Def's. Mov. Br.") as a "Defendant's motion to lift temporary restraints," and will refer to Plaintiff's reply to the instant motion (ECF No. 24, "Pl's. Opp. Br.") as "Plaintiff's opposition brief."

1

## BACKGROUND

Plaintiff Meadowlands is an Acute Care Hospital located in Secaucus, New Jersey. (ECF No. 1-4, "Compl." at 1). Defendant Siemens Healthcare Diagnostics, Inc. is in the business of selling and leasing clinical equipment and supplies to healthcare providers, including hospitals. (Id. ¶¶ 1-13). Through a series of written agreements and supplements to those agreements, executed as early as July 28, 2011, Siemens and Meadowlands have contracted for the sale and lease of various medical products and equipment.[2] (Id. ¶ 1). Specifically, Siemens has agreed to sell Meadowlands certain "reagents," or chemical substances used in conjunction with diagnostic tools to run clinical testing. (Id. ¶ 6; Pl's. Opp. Br. at 1). The parties have also entered into a lease agreement relating to Siemens' StreamLAB device, "a conveyor device that interfaces with diagnostic equipment manufactured by Siemens." (Compl. ¶ 9).

Plaintiff alleges that beginning in March 2013, only one month after the StreamLAB device was installed, it malfunctioned at least once a week and that since March 2014, the device has been entirely out of service and Defendant has failed to make repairs. (Id. ¶¶ 14-23). On account of what it viewed as a breach of contract as to the lease agreement, the Hospital ceased making its monthly lease payments for the device in or around October 2014. (Id. ¶ 29). On January 9, 2014, allegedly out of retaliation for Meadowlands' refusal to make lease payments related to the StreamLAB device, counsel for Siemens wrote to Meadowlands to advise the Hospital that

---

[2] While Meadowlands argues that it leased certain equipment from Siemens Diagnostic Finance Co., LLC ("SDFC") rather than Siemens, and that therefore any right to challenge Meadowland's failure to make lease payments lies in SDFC and not Siemens (Pl's. Opp. Br. at 14-15), Siemens explains that since the execution of the lease agreement, SDFC was merged into Siemens (Def's. Mov. Br. at 15-17). Accordingly, Siemens contends that it is the lessor of the StreamLAB equipment in question, and therefore has a right to challenge Meadowlands' failure to make lease payments. (Id. at 15-16). Because, as discussed below, the Court need not reach Plaintiff's likelihood of success on the merits in consideration of Meadowland's request for a preliminary injunction, it need not opine on the significance of the merger.

2

"Siemens intends to withhold the delivery of reagents and other products to [Meadowlands]." (Id. ¶ 32; Pl's. OTSC Mot. at 6-7).

Soon thereafter, on February 12, 2015, Plaintiff filed a Verified Complaint against Siemens seeking temporary restraints in the Superior Court of New Jersey, Chancery Division. (Pl's. OTSC Mot.). Plaintiff asserts claims against Siemens for breach of contract, breach of warranty, the New Jersey Consumer Fraud Act, and violation of the Magnuson-Moss Federal Trade Commission Improvement Act. (Compl. at 8-12). On February 13, 2015, the Honorable Judge Hector R. Velazquez entered an order to show cause with temporary restraints, directing Siemens "to fulfill orders for reagent and other products and supplies pursuant to its contracts with [P]laintiff." (ECF No. 1-3, "TRO" at 2). Before the date of the show cause hearing scheduled by Judge Velazquez, Defendant removed this action to Federal Court on the grounds of diversity and federal question jurisdiction. (ECF No. 1, "Notice of Removal" ¶¶ 7-13).

Since removal to this Court, the parties have engaged in numerous settlement discussions, but to no avail. (See ECF Nos. 11, 17, 19). On September 28, 2015, counsel informed this Court that the parties had reached an impasse in their negotiations. (ECF No. 21). After a final settlement conference before the Honorable Magistrate Judge Joseph A. Dickson on October 5, 2015, the Defendant was instructed to file its opposition to Plaintiff's motion for a preliminary injunction. (ECF No. 22). Defendant filed its opposition, labeled a "motion to lift temporary restraints" on October 30, 2015 (ECF No. 23), and Plaintiff replied on November 19, 2015 (ECF No. 24, "Pl's. Opp. Br."). This matter is now ripe for adjudication.

## **LEGAL STANDARD**

The granting of a preliminary injunction "is an extraordinary remedy . . . which should be granted only in limited circumstances." *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). "The purpose of such an injunction is to protect the moving party from irreparable injury until the court can render a meaningful decision on the merits." *Caplan v. Fellheimer Eichen Braverman & Kaskly*, 68 F.3d 828, 839 (3d Cir. 1995). Before a court can enter a preliminary injunction, the moving party must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004); *see also Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 812 (3d Cir. 1989).

While a district court is required to balance these four factors, the Third Circuit has held that a court may not enter a preliminary injunction where the plaintiff has not carried its burden of meeting the likelihood of success on the merits *or* irreparable injury prongs. *See In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir.1982) ("[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury[] must necessarily result in the denial of a preliminary injunction."); *see also Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987). To that end, the Court first considers whether Plaintiff has shown irreparable harm.

## DISCUSSION

The TRO entered in State Court on February 13, 2015 remains in effective. (See TRO). That Order directs Defendant "to fulfill orders for reagents and other products and supplies pursuant to its contracts with [P]laintiff." (TRO at 2). Plaintiff requests a continuance of Judge

4

Velazquez's TRO,[3] arguing that the hospital, as well as the patient community, will suffer irreparable harm if the Order is lifted. (Pl's. OTSC Mot. at 3-4; Pl's. Opp. Br. at 8-9). In response, Defendant has consented to continued restraints regarding the reagents and supplies it deems "critical," but asks this Court to lift the temporary restraints as to non-critical reagents and supplies. (Def's. Mov. Br. at 18).

Defendant asserts that no more than 29 percent "of the reagents and supplies which are the subject of Plaintiff's application, and which are now being supplied under Court Order by Siemens" are "critical" in nature. (ECF No. 23-1, Affidavit of James Donnelly, Chief Scientific Officer & Global Vice President of Medical Scientific and Statistical Affairs of Siemens, "Donnelly Aff." ¶¶ 15, 18). By Siemens' definition, "critical" reagents are those necessary to run tests "to be performed in a relatively short period of time to determine if urgent medical intervention is necessary, or if alternate care is required to avoid further harm." (Id. at ¶ 17). According to Siemens' Chief Scientific Officer, Mr. James Donnelly, examples of critical reagents that Siemens provides to Meadowlands are Troponin, hCG, and Creatinine, used for the diagnosis of heart problems, ectopic pregnancy, and renal failure, respectively. (Id. ¶ 18). Additionally, Siemens has provided the Court with a spreadsheet, prepared in the ordinary course of business, listing reagents and supplies that Meadowlands has purchased within the past eighteen months which indicates those products and supplies that are "Not Critical." (ECF No. 23-12, Ex. K to Donnelly Aff., "Spreadsheet"). Siemens has agreed to continue to provide critical reagents and supplies, but asks that the Court lift the TRO to the extent that it compels Siemens to provide non-critical reagents and supplies. (Donnelly Aff. ¶ 21). Siemens explains that the "non-critical" products, while necessary for care, are not necessary "for the *urgent* delivery of care." (Id. ¶ 18).

---

[3] Stated differently, Plaintiff seeks the entry of an order preliminarily enjoining Defendant from refusing to fulfill orders for all reagents.

Thus, Defendant contends that Plaintiff has failed to show irreparable harm justifying the entry of a preliminary injunction and accuses Plaintiff of offering only "a self-serving and conclusory statement that 'irreparable harm will be caused to both [Meadowlands] and the local patient community, which will be unable to obtain emergency diagnostics.'" (Def's. Mov. Br. at 9, quoting Pl's. OTSC Mot. at 4). With regards to the non-critical reagents, Mr. Donnelly attests to the fact that there will not be harm to the patient population because Meadowlands may utilize reference laboratories, at least one of which is within ten miles of the hospital, to have certain tests performed. (Donnelly Aff. ¶ 20).

In Meadowlands' motion for an order to show cause as to why preliminary restraints should not be entered, it argued that absent a preliminary injunction, "irreparable harm will be caused to both the applicant Meadowlands and the local patient community, which will be unable to obtain emergency diagnostics." (Pl's. OTSC Mot. at 4). In its opposition to Defendant's motion, Plaintiff does not clearly respond to the effect that Siemens' concession to provide critical reagents has on Meadowlands' request for a preliminary injunction. (See Pl's. Opp. Br. at 8). In fact, Plaintiff appears to agree with Mr. Donnelly that that Troponin, hCG, and Creatinine, which Siemens agrees to continue providing, are critical reagents. (Id.). Moreover, Plaintiff does not take exception with the Siemens' Spreadsheet that identifies certain products and reagents as "Not Critical." As to Mr. Donnelly's suggestion that Meadowlands can contract with reference laboratories for the performance of tests not requiring "critical" reagents, Meadowlands responds that "[i]n a non-emergent setting, these reagents are important for the timely delivery of care, something Meadowlands has made a priority since it came under new ownership in 2010." (Pl's. Opp. Br. at 10).

6

With regards to the irreparable harm inquiry, a plaintiff must establish more than a risk of irreparable injury. *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205 (3d Cir.1990). He must demonstrate "a clear showing of immediate irreparable injury." *Id.* (quoting *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 225 (3d Cir. 1987)). The Third Circuit has long held that "the requisite feared injury or harm must be irreparable—not merely serious or substantial," and it "must be of a peculiar nature, so that compensation in money cannot atone for it." *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1997). In other words, "[i]njunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties." *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980).

The Court finds that Plaintiff has failed to show how irreparable injury will result if the Court lifts the TRO. Meadowlands appears to argue that Siemens' withholding of *any* reagents, and not just the "critical" ones it has conceded it will supply, will harm its patient population. (Pl's. Opp. Br. at 10). However, Plaintiff does not explain why contracting with reference laboratories for the performance of non-urgent tests, as Mr. Donnelly suggest, will not suffice. In other words, Meadowlands has not convinced the Court that the only way to protect its patients is to enter an injunction mandating Siemens to continue to provide all contracted-for reagents and supplies.

Plaintiff also contends that if an injunction is not entered, there will be a delay in treatment that will result in irreparable harm to Meadowlands' reputation and good will. (Id. at 10). While Plaintiff is correct that harm to reputation and/or good will may satisfy the irreparable harm requirement, a plaintiff's "blanket statement" that failure to issue a preliminary injunction will cause irreparable harm to one's reputation and good will is insufficient. *See Stryker v. Hi-Temp Specialty Metals, Inc.*, Civ. No. 11-6384, 2012 WL 715179, *5 (D.N.J. Mar. 2, 2012); *see also*

*American Financial Resources, Inc. v. Money Source, Inc.*, Civ. No. 14-651, 2014 WL 1705617, * 12 (D.N.J. Apr. 29, 2014). Moreover, irreparable reputational harm is typically, and with limited exception, found in the specific context of allegations of trademark infringement or misappropriation of proprietary information or trade secrets. *See, e.g. Roman Chariot, LLC v. JMRL Sales & Service, Inc.*, Civ. No. 06-626, 2006 WL 4483165, * (D.N.J. July 11, 2006) ("If injury to reputation and goodwill outside of the trademark context were irreparable, [plaintiff] does not demonstrate sufficient harm to its reputation or good will to warrant a preliminary injunction."). Such is the case because in the trademark and trade secrets arena, reputation is "directly endangered by the defendant's actions" and thus the defendant's actions *"in and of themselves"* may constitute a harm to the plaintiff's reputation. *Bennington Foods LLC v. St. Croix Rennaissance Group, LLP*, 528 F.3d 176, 179-80 (3d Cir. 2008) (emphasis added) (discussing *Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*, 43 F.3d 800 (3d Cir. 1998) and *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589 (3d Cir. 1979)).

Here, there is nothing in the record to demonstrate that Siemens' actions in withholding non-critical reagents and supplies, "in and of themselves," will result in irreparable harm to the Hospital's reputation and/or good will. *Bennington Foods*, 528 F.3d at 179-80; *see also Bennington Foods*, 528 F.3d at 178-79 (reversing the district court's grant of a preliminary injunction after the district court found that plaintiff would suffer an irreparable harm to his reputation for being able to timely deliver products absent a preliminary injunction). To begin, there is no evidence that the Hospital maintains any particular reputation for timely care. Plaintiff's opposition brief merely stated that it has made "timely delivery of care" a "priority" since 2010, but Plaintiff has not cited to any evidence in the record, nor has the Court found any evidence, that Meadowlands in fact has a reputation for timely care. (Pl's. Opp. Br. at 10). Further, and as noted

above, Meadowlands has not explained why it would not be able to contract with an outside laboratory to effectuate the timely diagnosis of patients.

For these reasons, the Court finds that Plaintiff has not satisfied its burden of showing irreparable harm in the absence of an injunction. That is, no imminent injury has been established as the injury must be a *presently* existing threat, and not a remote or speculative possibility of future harm, as appears to be the case here. *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994) (emphasis added). As we have found that Plaintiff "has not met this heightened pleading standard and that there is no possibility of irreparable harm on the record before us, there is no need to analyze the other prongs of the test." *Bennington Foods*, 528 F.3d at 179.

## CONCLUSION

For the reasons stated herein, Siemens' motion to lift temporary restraints (ECF No. 23) is hereby granted, with the caveat that Siemens shall continue to supply all critical reagents and supplies that the parties have contracted for, including those not otherwise designated as "Not Critical" in the Spreadsheet attached as Exhibit K to the Donnelly Affidavit (ECF No. 23-12).[4]

IT IS SO ORDERED.

DATED: December 21, 2015

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

---

[4] Because Meadowlands does not appear to have taken issue with the designation of certain reagents and supplies in Exhibit K to the Donnelly Affidavit as "Not Critical," the Court will assume that Plaintiff concedes that same are, in fact, not critical in nature.